IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

———————————————————————————————
                                     )
DONNA KUEHU,                         )
                                     )
                    Plaintiff,       )
                                     )
v.                                   ) Civ. No. 16-00216 ACK-KJM
                                     )
UNITED AIRLINES, INC., a foreign     )
profit corporation; JOHN DOES        )
1-10; JANE DOES 1-10; DOE            )
CORPORATIONS 1-10; DOE               )
PARTNERSHIPS 1-10; DOE               )
UNINCORPORATED ORGANIZATIONS 1-10;   )
and DOE GOVERNMENTAL AGENCIES        )
1-10,                                )
                                     )
                    Defendants.      )
———————————————————————————————)

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant United Airlines, Inc.'s Motion for Partial Dismissal of Complaint Filed December 22, 2015.  ECF No. 7.

### PROCEDURAL BACKGROUND

On December 22, 2015, Plaintiff Donna Kuehu ("Plaintiff") filed a Complaint against Defendant United Airlines, Inc. ("Defendant") in the Circuit Court of the First Circuit, State of Hawaii.  Compl., ECF No. 1-2.  On May 4, 2016, Defendant removed the case to federal court based on the fact that the Complaint alleges claims arising under federal law and

that there is diversity of citizenship between the parties. Notice of Removal, ECF No. 1.  Plaintiff alleges both federal and state law claims of disability discrimination and retaliation, as well as a claim for intentional infliction of emotional distress ("IIED").  Compl. ¶¶ 107-22, 162-64.

On May 11, 2016, Defendant filed a Motion for Partial Dismissal of Complaint Filed December 22, 2015, along with a Memorandum in Support of Motion ("Motion"), seeking to dismiss certain claims under the Americans with Disabilities Act Amendments Act ("ADAAA") and Hawaii Revised Statute § 378-2 as time-barred; to dismiss Plaintiff's IIED claim due to its being barred by the applicable statute of limitations and the exclusivity provision of Hawaii's workers' compensation law; and to dismiss Plaintiff's claims for punitive damages as to her discrimination claim brought under the ADAAA, as well as her claims for both punitive and compensatory damages for her retaliation claim brought under the ADAAA.  Motion at 2.

Plaintiff filed a Memorandum in Opposition to Defendant's Motion ("Opposition") on August 1, 2016, ECF No. 21, and Defendant filed a Reply Memorandum in Support of Motion ("Reply") on August 8, 2016, ECF No. 24.

The Court held a hearing regarding Defendant's Motion on August 22, 2016.

- 2 -

**FACTUAL BACKGROUND**

On August 28, 1989, Plaintiff accepted a position with Defendant as a Reservations Sales and Service Representative in its Honolulu call center, which was located in downtown Honolulu.  Compl. ¶ 13.  Around September 2000, Defendant relocated the call center to a warehouse building located at Honolulu International Airport.  Id. ¶¶ 16, 18.  The Complaint alleges that while working at the new building, Plaintiff was "exposed to chronic events of reported 'rotten egg sewer gas odor' and 'plumbing and sewage problems', noxious/toxic substances, gases and/or biological pathogens including bacteria, viruses and fungus microorganisms over an extended period of time."  Id. ¶ 19.

In May 2001, Plaintiff became totally disabled as a result of a pre-existing condition of chronic lumbalgia (lower back pain).  Id. ¶ 21; Opposition at 2.  She therefore took a leave of absence from work from May 30, 2001 through June 11, 2001.  Compl. ¶ 21; Opposition at 2.

On August 22, 2005, Plaintiff was exposed to "uncontrolled harmful conditions" at the call center and was evacuated by the Hazardous Material Unit of the Honolulu Fire Department.  Compl. ¶ 25.  The next day, Plaintiff's physician advised her that she was being exposed to hydrogen sulfide in the form of sewage backup, and certified sick leave for

Plaintiff from August 22, 2005 to August 29, 2005.  Id. ¶¶ 29-
31.  Plaintiff also filed a workers' compensation claim in
connection with the August 22 incident.  Id. ¶ 31.

On or around January 25, 2006, following an incident
in Defendant's building involving the release of a noxious/toxic
substance, Plaintiff's physician assessed her as medically
unable to work.  Id. ¶ 35-37.  The next day, Defendant placed
Plaintiff on extended illness status.  Id. ¶ 38.  Plaintiff also
appears to have filed another workers' compensation claim for
the January 25 incident.  Id. ¶ 38, 42.

On October 2, 2009, after meeting with her medical
providers, Plaintiff provided Defendant with a release to return
to work and a request for a reasonable accommodation.  Id. ¶ 66.
On October 26, 2009, pursuant to a request by a physician in
Defendant's medical department, Plaintiff's physician provided a
further explanation of conditions and recommendations for
Plaintiff.  Id. ¶ 73.  On October 30, 2009, Defendant's
physician completed an "Assessment of Functional Capabilities"
for Plaintiff as part of a "post-accident/illness assessment of
suitability for return to work."  Id.  The physician assessed
Plaintiff with "long-term functional limitations," and
restricted her from working in the call center building or for
longer than 20 hours per week.  Id.

Plaintiff contends that throughout October and into November 2009 she attempted to schedule a meeting with Defendant's human resources manager, Denise Peterson, to discuss the appropriate process for Plaintiff's reasonable accommodation request.  Id. ¶¶ 67-72, 74-75, 78-80.  This meeting was not held until November 16, 2009.  Id. ¶¶ 80, 82.  During the meeting, Peterson offered Plaintiff a return to work at the call center building, where she could work 30 hours per week with a paper mask.  Id. ¶ 80.  Plaintiff did not accept the position because it did not comport with the physicians' recommendations.  Id. ¶¶ 80-81.

Meanwhile, while waiting to hear back on her request for a reasonable accommodation, Plaintiff had applied to an open job posting for a regular part-time position as a customer service representative in Kona, Hawaii.  Id. ¶ 74.  Following her November 16 reasonable accommodation meeting, Plaintiff also applied for positions in Chicago, Illinois; St. Louis, Missouri; and Harrisburg, Pennsylvania.  Id. ¶ 83.

On December 9, 2009, Plaintiff was contacted regarding the position in Kona by a manager from Sourceright Solutions, a third-party contractor Defendant used to assist in its hiring processes.  Id. ¶¶ 84-85.  Plaintiff attended a job testing, group interview, and one-on-one interview for the position on December 17, 2009.  Id. ¶ 88.  She received a phone call on

January 7, 2010 informing her that she had not been selected for the position in Kona, and learned that she received a "very poor assessment rating" and failed her group interview.  Id. ¶¶ 92, 94.  Plaintiff was told that she had passed the "written part" of the interview process, but that "her response to 'teamwork' [] was not acceptable."  Id. ¶ 95.  On January 12, 2010, Plaintiff received a phone call from Peterson informing her that she had been terminated from her position at the company, effective January 8, 2010.  Id. ¶ 99.

On January 27, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC"), alleging both discrimination based on her disability and retaliation by Defendant.[1]  Id. ¶ 102.  On September 26, 2015,

---

[1] Defendant notes in its Motion that Plaintiff's Complaint incorrectly states the date Plaintiff filed her Charge of Discrimination as January 25, 2010.  Motion at 4 n.1.  As the Charge of Discrimination form itself indicates, however, the form was filed on January 27, 2010.  Ex. B to Motion, ECF No. 7-4.  "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  However, "courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original).  While the Charge of Discrimination is not attached to her Complaint, Plaintiff explicitly refers to the form in her Complaint and
(continued . . .)

Plaintiff received from the EEOC a right-to-sue letter dated September 23, 2015.  Id. ¶ 105.  She received a right-to-sue letter from the HCRC on December 17, 2015.  Id. ¶ 106. Plaintiff thereafter filed her Complaint in the Circuit Court of the First Circuit, State of Hawaii, on December 22, 2015.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The Court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may

---

does not dispute its authenticity.  In fact, Plaintiff concedes in her Opposition that the form was actually filed on January 27, 2010.  Opposition at 10.

appear to the district court." Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 791 (9th Cir. 2011).

Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." United States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011). A "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57) (some quotation marks omitted).

The Court may, but is not required to, "consider certain materials — documents attached to the complaint,

documents incorporated by reference in the complaint, or matters
of judicial notice — without converting the motion to dismiss
into a motion for summary judgment." United States v. Ritchie,
342 F.3d 903, 908 (9th Cir. 2003); see Davis, 691 F.3d at 1159-
60 (court not required to incorporate documents by reference).
The Court may also consider documents whose contents are alleged
in a complaint and whose authenticity is not questioned by any
party. Davis, 691 F.3d at 1160. The Court need not accept as
true allegations that contradict the complaint's exhibits,
documents incorporated by reference, or matters properly subject
to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580,
588 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d
979, 988 (9th Cir. 2001).

A court should grant leave to amend "even if no
request to amend the pleading was made, unless it determines
that the pleading could not possibly be cured by the allegation
of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.
2000) (en banc) (citations omitted). Leave to amend "is
properly denied, however, if amendment would be futile."
Carrico v. City & Cty. of S.F., 656 F.3d 1002, 1008 (9th Cir.
2011).

## DISCUSSION

### I.   Time-Barred Claims

Defendant argues that Plaintiff cannot base her discrimination or retaliation claims on certain acts that occurred prior to the time bars set out by federal and state law.  Motion at 6-9.  Where, as here, a plaintiff files charges with both the EEOC and the HCRC, federal law requires that a discrimination charge under ADAAA be filed with the EEOC within 300 days after the alleged discriminatory act.  42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)); Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (overruled on other grounds).  A charge of discrimination under Hawaii Revised Statute § 378-2 must be filed with the HCRC within 180 days of the alleged discriminatory act.  Haw. Rev. Stat. 368-11(c).  A plaintiff that fails to file a charge for discrete discriminatory or retaliatory acts within the requisite time period loses the ability to recover for them.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

Because she filed her charge on January 27, 2010, Plaintiff's ADAAA claims are only timely to the extent they are based on discriminatory or retaliatory acts that occurred on or after April 2, 2009 (300 days before Plaintiff filed her charge with the EEOC); and Plaintiff's state claims under Hawaii Revised Statute § 378-2 are only timely to the extent they are

based on discriminatory or retaliatory acts that occurred on or
after July 31, 2009 (180 days before Plaintiff filed her charge
with the HCRC).

Plaintiff concedes that discrete acts occurring before
April 2, 2009 and July 31, 2009 cannot form the basis of her
federal or state law claims, respectively.  Opposition at 10.
However, she argues that these acts can be taken into account by
the Court to "show a pattern of conduct and as background
leading up to the actionable conduct of [Defendant]." Id.  Yet
Defendant takes issue with this argument, stating, "[T]o the
extent Plaintiff may mean to assert that her claims are not
barred because they involve a 'continuing violation,' that
argument fails."  Reply at 3.

"Generally, under the continuing violations doctrine,
discriminatory conduct contributing to a hostile work
environment claim, but falling outside of the statutory time
period for filing a claim, may be considered by the Court for
purposes of determining liability." Aoyagi v. Straub Clinic &
Hosp., Inc., 140 F. Supp. 3d 1043, 1053 (D. Haw. 2015) (citing
Morgan, 536 U.S. at 116-17).  Unlike discrete acts of
discrimination or retaliation, which "occur" on the day that
they "happen" and constitute "separate actionable 'unlawful
employment practice[s],'" hostile work environment claims
involve repeated conduct and "occur[] over a series of days or

perhaps years and . . . a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 110, 114-15.  As long as one act that contributes to a hostile work environment claim occurs within the relevant filing period, the entire time period encompassing the claim may be considered for purposes of determining liability.  Id. at 117.

In evaluating whether various acts, taken together, constitute one actionable hostile work environment claim, the court considers "whether they were sufficiently severe or pervasive, and whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, or were perpetrated by the same managers." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 893 (9th Cir. 2004) (quotation marks and brackets omitted).  Additionally, while the Ninth Circuit has "permitted suit on a continuing violation theory evidenced but not specifically alleged in an EEOC charge . . . the EEOC charge must at least sufficiently apprise the EEOC, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 638 (9th Cir. 2002) (internal citations and quotation marks omitted).

As Defendant points out, Plaintiff did not check the "Continuing Action" box on her Charge of Discrimination.  See Ex. B to Motion, ECF No. 7-4.  Further, the earliest events

comprising the basis of Plaintiff's claims to which the charge makes reference occurred in October and November 2009.  See id. The charge states that the basis of Plaintiff's claims are Defendant's failure to either engage in an interactive process regarding her request for a reasonable accommodation or provide her with an effective reasonable accommodation; Defendant's decision not to hire Plaintiff for the position in Kona, for which she believed she was qualified; and Defendant's decision to terminate her employment.  Id.

The EEOC charge does not allude to a pattern of discriminatory conduct that persisted prior to October 2009. Plaintiff merely states that she developed a disability while working in January 2006, that Defendant was made aware of this condition, and that she was thereafter unable to work until October 2009.  Id.  Thus, the events asserted in the charge are cabined to the statutory time periods for filing a claim, suggesting that it was not Plaintiff's intent to assert a continuing violation claim comprised of events that occurred before the federal and state time bars.

Furthermore, even if the Court were to determine that Plaintiff asserted a continuing violation claim, the earlier acts alleged in the Complaint do not give rise to a pattern of discrimination that is sufficiently "severe or pervasive" or at the level of frequency that would constitute a hostile work

environment.  Plaintiff's Complaint makes reference to instances where Defendant denied liability for Plaintiff's January 25, 2006 injury for purposes of Plaintiff's workers' compensation claim, Compl. ¶ 41; sent letters to Plaintiff demanding the return of temporary disability insurance benefits, due to the fact that she had a pending workers' compensation claim, id. ¶¶ 43-45; and failed to pay for Plaintiff's medical treatments, despite being ordered to do so pursuant to an award of workers' compensation Plaintiff had received, id. ¶¶ 49, 54, 60.  The Court is not persuaded that these actions suggest Defendant was discriminating against Plaintiff; rather, the actions seem to reflect certain legal decisions Defendant made in its ongoing workers' compensation dispute with Plaintiff.

Plaintiff also alleges that Defendant inquired as to whether Plaintiff would be taking Family Medical Leave Act leave in connection with the August 22, 2005 incident, to which Plaintiff responded that this would not be appropriate and that she would instead be using her sick leave to make an appointment with her physician.  Id. ¶ 28.  This simple inquiry does not appear to involve disability discrimination, especially since Plaintiff indeed used her sick leave without issue during this time period.  Id. ¶ 31.

Finally, Plaintiff contends that in January 2006 Defendant placed her on extended illness status despite the fact

that she had "hundreds of hours of non-occupational and occupational sick leave available." Id. ¶ 38. During this time, Defendant made various demands that she attend an investigative meeting in the building determined to be the cause of her medical condition. Id. ¶¶ 45, 47, 51. If these actions could be said to evince discrimination at all, a proposition of which the Court is skeptical, they certainly do not give rise to a pattern of discrimination, as required for a continuing violation claim. See Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998) (finding that "[b]ecause [plaintiff's] hostile work environment claim is not based upon a series of discrete and unrelated discriminatory actions, but is instead premised upon a series of closely related similar occurrences that took place within the same general time period and stemmed from the same source, her allegations set forth a claim of a continuing violation"). The Court therefore concludes that the acts asserted in the Complaint are not severe, pervasive, or frequent enough to state a continuing violation claim.

For the foregoing reasons, the Court HOLDS that Plaintiff cannot rely on events occurring prior to April 2, 2009 for purposes of her ADAAA claims, and that she cannot rely on events occurring prior to July 31, 2009 for purposes of her claims brought under Hawaii Revised Statute § 378-2.

## II.  IIED Claim

### a. Statute of Limitations

Defendant next argues that the Court should dismiss Plaintiffs IIED claim because it is barred by the applicable statute of limitations.  Motion at 9-12.  Plaintiff does not oppose this argument in her Opposition.

The Hawaii tort statute provides a two-year statute of limitations, which has been determined to apply to IIED claims. Haw. Rev. Stat. § 657-7; see Hale v. Haw. Publ'ns, Inc., 468 F. Supp. 2d 1210, 1232 (D. Haw. 2006).  Defendant argues that because the last wrongful act alleged to have been committed by Defendant was the termination of Plaintiff's employment, which occurred in January 2010, any IIED claim Plaintiff can assert is barred by the statute of limitations.  See Motion at 10.

Further, as Defendant argues in its Motion, "parallel avenues of relief are generally not tolled by a Title VII administrative remedy, even if the claims are based on the same facts and directed toward the same ends."  Hale, 468 F. Supp. 2d at 1232.  Thus, "[w]hen a plaintiff fails to timely file claims that are separate, distinct, and independent from her Title VII claims, those claims are barred."  Id.; see also Johnson v. Ry. Express Agency, 421 U.S. 454, 461 (1975).  This Court has previously determined that IIED claims are separate, distinct, and independent from Title VII claims because federal

- 16 -

administrative proceeds are not a prerequisite to the filing of an IIED claim.  <u>Hale</u>, 468 F. Supp. 2d at 1232-33.  The same is true of claims brought pursuant to the ADAAA.  Thus, Plaintiff's EEOC charge does not toll the statute of limitations for her IIED claim.

Defendant likewise asserts that Plaintiff's HCRC charge did not toll the statute of limitations for her IIED claim.  Because the Court has been unable to locate any Hawaii state law precedent regarding this point, it looks to federal law, as it did in <u>Hale</u>.  <u>Id.</u> at 1233.  Thus, similar to its inquiry with respect to federal administrative proceedings, the Court must determine "whether the administrative process outlined by Chapter 378 may have been intended to delay independent avenues of redress for IIED claims."[2]  <u>Id.</u>

---

[2] Defendant cites <u>Hale</u> for its contention that Plaintiff's HCRC charge did not toll the statute of limitations for her IIED claim.  Motion at 11-12.  In <u>Hale</u>, this Court found that state administrative proceedings regarding plaintiff's sexual harassment claims did not toll the statute of limitations on her related IIED claim.  <u>Hale</u>, 468 F. Supp. 2d at 1233.  The Court reasoned that because individuals are not required to file their sexual harassment claims with the HCRC, "[i]t logically follows that IIED claims that are related to sexual harassment claims need not be pursued in an administrative proceeding."  <u>Id.</u>; <u>see also</u> Haw. Rev. Stat. § 378-3(10) (stating that the general requirement that complaints alleging discrimination under state law first be filed with the HCRC does not "preclude any employee from bringing a civil action for sexual harassment or sexual assault and infliction of emotional distress").  In the instant case, Plaintiff alleges discrimination and retaliation based on disability, which claims Chapter 378 of the Hawaii Revised

(continued . . .)

Hawaii Revised Statute § 368-11 requires a plaintiff to file with the HCRC a complaint alleging a discriminatory practice made unlawful by Part I of Chapter 378.  The relevant question, then, is whether HCRC administrative proceedings are also a prerequisite to a plaintiff bringing an IIED claim that is based on the same facts underlying the discrimination and retaliation claims brought under Chapter 378.  In Simmons v. Aqua Hotels and Resorts, Inc., the Hawaii Intermediate Court of Appeals ("ICA") found that the lower court had erred when it dismissed plaintiff's IIED claim against a defendant; the lower court had dismissed the claim because plaintiff failed to name that defendant in an HCRC complaint that alleged a claim for age discrimination.  310 P.3d 1026, 1031 n.3 (Haw. Ct. App. 2013). The ICA stated that "[t]he IIED claim was a separate claim independent of [p]laintiff's HRS § 378-2 claim and was not subject to the statutory provisions that require filing an HCRC complaint before filing suit."  Id.; see also Hale, 468 F. Supp. 2d at 1233 ("The IIED claim is also distinct and independent from the [state] retaliation claims.").

Thus, the Court concludes that HCRC administrative proceedings are not a prerequisite to bringing an IIED claim,

---

Statutes *does* require to be filed with the HCRC in the first instance.  See Haw. Rev. Stat. §§ 368-11, 378-4.  This portion of the Court's analysis in Hale is therefore inapplicable to the present case.

even if that claim arises from the same conduct that forms the basis of a plaintiff's discrimination or retaliation claims. Accordingly, Plaintiff's HCRC charge did not toll the statute of limitations for her IIED claim.

Because Plaintiff failed to file her IIED claim within the applicable two-year statute of limitations, the Court holds that Plaintiff is barred from bringing this claim.  The Court therefore GRANTS Defendant's Motion as to this issue, and DISMISSES Plaintiff's IIED claim.

### b. Exclusivity Provision of Hawaii Workers' Compensation Law

Defendant alternatively argues that Plaintiff's IIED claim is barred by Hawaii's workers' compensation law, which contains an exclusivity provision stating:

> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

Haw. Rev. Stat. § 386-5.

In Yang v. Abercrombie & Fitch Stores, the ICA determined that this provision bars IIED claims that do not

relate to sexual harassment or sexual assault.  284 P.3d 946, 950, 955 (Haw. Ct. App. 2012).  Additionally, the Ninth Circuit has ruled that IIED claims arising out of alleged employment discrimination are barred by § 386-5.  Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir. 1990).  Defendant argues that because Plaintiff does not raise allegations of either sexual harassment or sexual assault, her IIED claim is barred.  Motion at 12-13.

      In response, Plaintiff argues that a District of Hawaii case has "recognized . . . the fact that HRS 386-5 might not be the exclusive remedy for intentional conduct such as discrimination."  Opposition at 11-12 (citing Chan v. Wells Fargo, 124 F. Supp. 3d 1045 (D. Haw. 2015)).  However, as Defendant points out, this argument is both misleading and lacks context.  See Motion at 7.  As Defendant points out, the court in Chan simply made an observation that it had declined in two of its prior decisions to reach a definitive ruling on the scope of the § 386-5 exclusivity bar.  Chan, 124 F. Supp. 3d at 1059-60.  The court had questioned in those earlier cases whether the exclusivity provision provided an exception for an IIED claim resulting from any form of discrimination, but ultimately concluded in Chan that the provision does in fact bar "independent IIED claims that are not related to sex."  Id.

Plaintiff also contends that in an unpublished, summary disposition order, the ICA noted that "Hawaiʻi state courts have applied the HRS § 386-5 exclusivity provisions to IIED claims, unless they arise out of sexual harassment, assault, or discrimination." Opposition at 12 (citing Bolla v. Univ. of Haw., 131 Haw. 252, 2014 WL 80554, at *2 (Haw. Ct. App. Jan. 8, 2014). From this language Plaintiff argues that an IIED claim related to a general claim of discrimination "may not" be barred by the exclusivity provision. See Opposition at 12. Yet as the Chan court noted, "[t]he Bolla decision may have used 'sexual' as an adjective modifying not only 'harassment,' but also 'assault' and 'discrimination.'" Chan, 124 F. Supp. 3d at 1059. Thus, Bolla does not appear to expand the IIED exception to the exclusivity provision, at least as to claims other than sex-based claims.

At the end of the day, Hawaii courts and federal courts applying Hawaii law have held time and again that the exclusivity provision of Hawaii's workers' compensation law bars IIED claims, unless those claims relate to sexual harassment or sexual assault. See, e.g., Yang, 284 P.3d at 950, 955; Chan, 124 F. Supp. 3d at 1059-60; see also Shahata v. W Steak Waikiki, LLC, 494 Fed. App'x 729, 731 (9th Cir. 2012) ("Except in cases of sexual harassment or abuse, the statute bars civil claims by

an employee against his employer for negligent infliction of emotional distress arising from employment.").

Because Plaintiff alleges disability discrimination and retaliation, the Court finds that her IIED claim is barred by § 386-5.  The Court therefore GRANTS Defendant's Motion in this respect, and DISMISSES Plaintiff's IIED claim on this alternative basis.

### III. Punitive and Compensatory Damages Under the ADAAA

Finally, Defendant argues that Plaintiff cannot recover punitive damages for her federal discrimination claim, and that she cannot recover either punitive or compensatory damages for her federal retaliation claim.  Motion at 13-14. Plaintiff concedes as much in her Opposition.  Opposition at 12.

The Ninth Circuit has held that "punitive and compensatory damages are not available for ADA retaliation claims."  Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1270 (9th Cir. 2009).  "[S]uch claims are limited to the equitable relief specified in 42 U.S.C. § 2000e-5(g)(1) . . . ."  Id.

However, Defendant is incorrect that Plaintiff may not seek punitive damages for her federal discrimination claim. Defendant cites Barnes v. Gorman, 536 U.S. 181, 189 (2002) for its assertion that "punitive damages may not be awarded in private suits brought under the ADA."  Motion at 13.  However, the holding in Barnes was limited to § 202 of the ADA, which

- 22 -

"prohibits discrimination against the disabled by public entities."[3] Barnes, 536 U.S. at 184, 189.   The instant case alleges employment discrimination by a private corporation.   The Supreme Court has held, "[P]unitive damages are available in claims under . . . the Americans with Disabilities Act of 1990 (ADA) . . . . Punitive damages are limited, however, to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529-30 (1999); see also 42 U.S.C. § 1981a(a)(2) (providing a right of recovery of punitive damages in cases involving discrimination in violation of 42 U.S.C. § 12112, section 102 of the ADA).

Accordingly, the Court HOLDS that Plaintiff may not seek either punitive or compensatory damages for her federal retaliation claim, but that she may continue to seek punitive damages as a remedy for her federal discrimination claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion for Partial Dismissal of

---

[3] The Barnes court also held that punitive damages could not be awarded in suits brought under § 504 of the Rehabilitation Act, which "prohibits discrimination against the disabled by recipients of federal funding, including private organizations." Barnes, 536 U.S. at 184, 189.

Complaint.  In sum, the Court DISMISSES with prejudice Plaintiff's IIED claim both because it violates the two-year statute of limitations for IIED claims in Hawaii, and because it is barred by the exclusivity provision of Hawaii's workers' compensation law.  Additionally, the Court HOLDS that Plaintiff cannot rely on events occurring prior to April 2, 2009 for purposes of her ADAAA claims, and that she cannot rely on events occurring prior to July 31, 2009 for purposes of her claims brought under Hawaii Revised Statute § 378-2.  Finally, the Court HOLDS that Plaintiff may not seek either punitive or compensatory damages for her federal retaliation claim, but that she may seek punitive damages for her federal discrimination claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, August 23, 2016.

Alan C. Kay
Sr. United States District Judge

Kuehu v. United Airlines, Inc., Civ. No. 16-00216 ACK-KJM, Order Granting in Part and Denying in Part Defendant's Motion for Partial Dismissal of Complaint.