IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

```
_____
                              )
DONNA KUEHU,                  )
                              )
                 Plaintiff,   )
                              )
v.                            )  Civ. No. 16-00216 ACK-KJM
                              )
UNITED AIRLINES, INC., a foreign )
profit corporation; JOHN DOES )
1-10; JANE DOES 1-10; DOE     )
CORPORATIONS 1-10; DOE        )
PARTNERSHIPS 1-10; DOE        )
UNINCORPORATED ORGANIZATIONS 1-10; )
and DOE GOVERNMENTAL AGENCIES, )
1-10,                         )
                              )
                 Defendants.  )
_____)
```

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment, ECF No. 44 ("Motion").

## PROCEDURAL BACKGROUND

On January 25, 2010, Plaintiff Donna Kuehu ("Plaintiff") filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") alleging discrimination based on her disability and retaliation by Defendant United Airlines ("Defendant"). Declaration of Eileen Zorc ("Zorc Decl."), Ex. J, ECF No. 45-15. The EEOC issued a right-to-sue letter on

September 23, 2015, and the HCRC issued the same on December 17, 2015.  Compl. ¶¶ 105-06, ECF No. 1-2.

On December 22, 2015, Plaintiff filed a complaint against Defendant in state court.  See Compl.  Plaintiff alleged both federal and state law claims of disability discrimination, and a claim for intentional infliction of emotional distress ("IIED").  Compl., ¶¶ 107-22, 162-64.  Defendant removed the case to federal court on the basis of diversity jurisdiction on May 4, 2016.  Notice of Removal, ECF No. 1.

On August 23, 2016, the Court granted in part and denied in part Defendant's Motion for Partial Dismissal.  ECF No. 27.  First, the Court held based on the applicable statutes of limitations that Plaintiff could only base federal claims under the Americans with Disability Act Amendments Act ("ADA") on events on or after April 2, 2009 and state claims under Hawaii Revised Statute ("HRS") § 378-2 on events on or after July 31, 2009.  Id. at 10-11.  Second, the Court dismissed Plaintiff's IIED claim.  Id. at 19-22.  Finally, the Court held that Plaintiff could not seek punitive or compensatory damages on her federal retaliation claim, but could seek punitive damages on her federal discrimination claim.  Id. at 23.

Defendant filed the instant Motion on March 1, 2017 seeking summary judgment on all remaining claims.  Plaintiff

filed her Opposition on May 1, 2017.  ECF No. 65 ("Opp.").

Defendant filed its Reply on May 8, 2017.  ECF No. 77 ("Reply").

The Court held a hearing on Defendant's Motion on May 22, 2017.

## FACTUAL BACKGROUND

Until she was terminated on January 8, 2010, Plaintiff was employed as a Reservations Sales Representative ("RSSR") in Defendant's call center in Honolulu.  Defendant's Concise Statement of Facts ¶¶ 1, 24, ECF No. 45 ("Def. CSF").[1]  In 2000, the call center was relocated to a building at the Honolulu Airport ("Reservations Center").  Id. ¶ 1.  On August 22, 2005, Plaintiff claims she was "exposed to uncontrolled harmful conditions," which her doctor advised was hydrogen sulfide.  Declaration of Donna Kuehu ¶¶ 15, 20, ECF No. 55-3 ("Kuehu Decl.");[2] Ex. D, ECF No. 56-3 (Dr. Seberg's conclusion of hydrogen sulfide exposure).  Plaintiff also complained of an odor at the Reservations Center on January 25, 2006, which Plaintiff asserts was due to the "release of a noxious/toxic substance."  Kuehu Decl. ¶ 25; Def. CSF ¶ 2.  Plaintiff's

---

[1] Defendant's CSF is undisputed apart from paragraphs 5, 8, 14, 19, 21, and 29, which are either partially or wholly disputed.  See Plaintiff's Concise Statement of Facts, ECF No. 55.

[2] Defendant objected to certain portions of Plaintiff's declaration and certain exhibits.  ECF No. 78.  As the Court does not need to rely on the evidence objected to, it declines to address Defendant's objections.

doctors diagnosed her with multiple chemical sensitivity, fibromyalgia, and migraine and chronic fatigue syndrome, which she asserts render her disabled under the ADA. Kuehu Decl. ¶ 48; Opp. at 23-24.

On January 26, 2006, Defendant placed Plaintiff on Extended Illness Status ("EIS") pursuant to Plaintiff's union's Collective Bargaining Agreement ("CBA"). Kuehu Decl. ¶ 28; Def. CSF ¶ 3; Declaration of Denise Peterson ¶ 3, ECF No. 45-22 ("Peterson Decl."). EIS allows an employee to be on leave for up to three years. Peterson Decl. ¶ 3. Termination after the expiration of EIS is "automatic" unless Defendant exercises its discretion to extend the EIS. Zorc Decl., Ex. G, Declaration of Carolyn A. Schoeneman ¶ 3, ECF No. 45-9.

Defendant informed Plaintiff by letters on August 19, 2009 and September 21, 2009 that her EIS would expire on October 23, 2009. Def. CSF ¶ 16. Shortly thereafter, Plaintiff's doctors, who had previously certified that she was unable to work due to "toxic chemical exposure," released her to work effective October 21, 2009 on a 20-hour per week schedule in a location which would not expose her to toxic fumes. Id. ¶¶ 13, 16. Defendant requested additional information regarding Plaintiff's medical status and limitations and extended her EIS status to allow time to obtain the information. Id. ¶ 18. After that information was provided, Plaintiff met with

Defendant's representatives, including Denise Peterson, the supervisor of the Reservations Center, on November 16, 2006. Peterson Decl. ¶ 1; see Kuehu Decl. ¶¶ 66, 73. The parties did not agree on an accommodation which would enable Plaintiff to return from leave and resume working as an RSSR in Hawaii. See Def. CSF ¶¶ 19-21; Kuehu Decl. ¶¶ 73-77.

Plaintiff then applied for Customer Service Representative ("CSR") positions in several locations. Def. CSF ¶ 22. Defendant used SourceRight Solutions Manager ("SourceRight"), an independent, third-party contractor, to conduct screenings and interviews for the CSR position. Id. ¶ 23. Laura Butler of SourceRight interviewed Plaintiff for a CSR position in Kona, Hawaii. Id. Defendant agreed to extend Plaintiff's EIS pending the results of her CSR interview. See id. ¶ 24. However, Plaintiff's interview score fell in the "Not Recommended" category, and as such Ms. Butler determined Plaintiff was not qualified and did not select her. Id. ¶ 23. SourceRight informed Plaintiff on January 7, 2010 of her non-selection, and Defendant then informed Plaintiff of her termination, effective January 8, 2010. Id. ¶ 24.

After termination, Plaintiff applied for various jobs, and worked in a seasonal position for the U.S. Census Bureau until the end of August 2010. Kuehu Decl. ¶ 102. She did not receive responses regarding other job applications. Id.

Plaintiff has also been pursuing her education, including bachelor's degrees, a master's degree, and currently a Ph.D. Def. CSF ¶ 29.[3]  Plaintiff has additionally participated in a work-study program and worked part-time as a college tutor and research assistant.  Kuehu Decl. ¶ 103.

During this time, Plaintiff also filed: (1) worker's compensation claims regarding both the August 22, 2005 and January 25, 2006 incidents; and (2) whistleblower claims against Defendant with the Department of Labor alleging violations of employee protection provisions in four environmental statutes. Def. CSF ¶¶ 4, 25; Memorandum of the Intermediate Court of Appeals at 3, Zorc Decl., Ex. D, ECF No. 45-5 ("ICA Mem. Op."); ALJ Decision & Order Denying Claims, Zorc. Decl., Ex. H, ECF No. 45-13 ("ALJ Decision").

Plaintiff's worker's compensation claims were consolidated and initially found compensable in 2007, but the Hawaii Labor and Industrial Relations Appeals Board ("LIRAB") reversed the decision on appeal finding that she failed to establish her claimed work injuries of multiple chemical sensitivity, chronic pain syndrome, fibromyalgia, or candidiasis existed.  Def. CSF ¶¶ 4, 11; LIRAB Decision & Order, Zorc Decl., Ex. C, ECF No. 45-4 ("LIRAB Decision").  The LIRAB also held

---

[3] Plaintiff only disputes this paragraph "to the extent it implies [she] has not sought employment."  Plaintiff's CSF ¶ 29.

that Plaintiff suffered from an undifferentiated somatoform disorder based on an "unsubstantiated and incorrect belief that she was exposed to dangerous levels of toxic substances." Def. CSF ¶ 11. The Hawaii Intermediate Court of Appeals affirmed the LIRAB's decision, and the Hawaii Supreme Court denied a writ of certiorari. Def. CSF ¶ 12; see ICA Mem. Op.

Plaintiff's environmental whistleblower claims, filed in 2010, were denied on May 25, 2012. ALJ Decision at 22-29; Def. CSF ¶ 25. The ALJ found inter alia that Plaintiff had not demonstrated a causal connection between her protected activity as an environmental whistleblower and her termination. ALJ Decision at 22-29; Def. CSF ¶ 25. The ALJ's decision was affirmed by the Administrative Review Board ("ARB") on February 10, 2014. Final Decision & Order, Zorc. Decl, Ex. I, ECF No. 45-14 ("ARB Decision"); Def. CSF ¶ 27. Plaintiff did not further appeal. Def. CSF ¶ 27.

**STANDARD**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u> <u>Broussard v. Univ. of Cal., at Berkeley</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also</u> <u>Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."

In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248). When considering the evidence on a

motion for summary judgment, the court must draw all reasonable

inferences on behalf of the nonmoving party. Matsushita Elec.

Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille

Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating

that "the evidence of [the nonmovant] is to be believed, and all

justifiable inferences are to be drawn in his favor").

## DISCUSSION

### I.  Disability Discrimination Claims

To establish a *prima facie* case of disability

discrimination, Plaintiff must demonstrate that "(1) she is a

disabled person within the meaning of the ADA; (2) she is a

qualified individual, meaning she can perform the essential

functions of her job; and (3) [Defendant] terminated her because

of her disability.").[4]  Nunes v. Wal-Mart Stores, Inc., 164 F.3d

---

[4] The Hawaii Supreme Court has expressly adopted the ADA analysis
for purposes of a *prima facie* case of disability discrimination
under HRS § 378-2. French v. Haw. Pizza Hut, Inc., 105 Haw.
462, 467, 99 P.3d 1046, 1051 (2004) (because of the textual
similarity, the Hawaii Supreme Court "adopt[ed] the analysis for
establishing a *prima facie* case of disability discrimination
under HRS § 378-2 that was established [under federal law]").
In addition, it has advised that Hawaii courts "may look to the
interpretations of analogous federal laws by the federal courts
for guidance" in construing claims under § 378-2. Id. (internal
quotation and citation omitted). As the parties have not
pointed to any relevant difference under Hawaii law, nor has the
(Continued...)

1243, 1246 (9th Cir. 1999).  Under the ADA and HRS § 378-2, a disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A); HAR § 12-46-182 (same definition).  A physical impairment includes "[a]ny physiological disorder or condition...affecting one or more body systems," and a mental impairment is "[a]ny mental or psychological disorder," such as an emotional or mental illness.  29 C.F.R. § 1630.2(h).

A. Whether Plaintiff is Precluded From Establishing Her Claimed Impairments

Defendant asserts that Plaintiff is precluded from establishing that she is disabled by virtue of the LIRAB Decision affirmed by the ICA.  Motion at 16-20.  Under 28 U.S.C. § 1738, "a federal court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered.'"  White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012) (citing Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 81 (1984)).  "The same rule applies to administrative proceedings that have been upheld by state courts."  Id.  In Hawaii,

> the test for collateral estoppel has four
> elements: (1) the fact or issue in the

_____

Court noted any, the Court will focus on federal caselaw for Plaintiff's disability discrimination claims.

> present action is identical to the one
> decided in the prior adjudication; (2) there
> was a final judgment on the merits in the
> prior adjudication; (3) the parties present
> in the action are the same or in privity
> with the parties in the prior action; and
> (4) the fact or issue decided in the prior
> action was actually litigated, finally
> decided, and essential to the earlier valid
> and final judgment.

Dannenberg v. Hawaii, 139 Haw. 39, 60, 383 P.3d 1177, 1198

(2016); see also Sheehan v. Cty. of Kaui, Civ. No. 12-00195 HG-

BMK, 2013 WL 1342364, at *11 (D. Haw. Mar. 29, 2013) (citing

same elements for purposes of full faith and credit and

collateral estoppel under Hawaii law).

Neither the second nor third element of the collateral

estoppel test is at issue.  There is no question that both

Plaintiff and Defendant here were parties in the worker's

compensation litigation and that the ICA opinion is a final

decision on the merits.  The dispute lies in whether there is an

identity of issues.  Plaintiff argues that her worker's

compensation case addressed whether her injuries arose from the

workplace, and disability under the ADA is not limited to the

workplace.  Opp. at 24-25.  Defendant focuses on the factual

findings underlying the LIRAB's ultimate determination.  See

Reply at 2-7.  After studying the parties' briefs, the Court

finds that the crux of the dispute is whether the LIRAB's

factual determination of what Plaintiff's condition is collaterally estops her from proving her claimed impairment.

In order to conclude, as it did, that Plaintiff did not sustain a personal injury on January 25, 2006 arising out of and in the course of employment, LIRAB Decision at 25, 28, the LIRAB necessarily had to decide what injury, if any, Plaintiff suffered.  See Royal State Nat'l Ins. Co. v. Labor & Indus. Relations Appeal Bd., 53 Haw. 32, 36, 487 P.2d 278, 281 (1971) (reversing directed verdict because jury could find claimant did not suffer claimed neck injuries); Masang v. Target Corp., 136 Haw. 190, 358 P.3d 759, at *6 (Ct. App. 2015) (unpublished disposition) (finding LIRAB erred in refusing testimony regarding whether claimant actually sustained claimed neck injury).  The LIRAB resolved conflicting evidence from various doctors and medical experts and determined that Plaintiff's "condition is an undifferentiated somatoform disorder, not multiple chemical sensitivity, chronic pain syndrome, fibromyalgia, or candidiasis."  LIRAB Decision at 25, 28.

Here, Plaintiff seeks to assert that her impairments are "Multiple Chemical Sensitivity, Fibromyalgia, Migraine and Chronic Fatigue Syndrome," which impairments have resulted in a host of symptoms that limit a wide range of activities.  Opp. at

23-24; Kuehu Decl. ¶ 19.[5]  Plaintiff appears to rely on the same

medical opinions as she did before the LIRAB.  And while

Plaintiff claims to experience symptoms in places other than

work, such as the grocery store or school, Kuehu Decl. ¶ 19, the

issue of what the underlying impairment causing these symptoms

is has already been litigated and finally determined by the

LIRAB.  As such, Plaintiff is collaterally estopped from proving

her claimed impairments exist, and thus her ADA claim premised

on these impairments is fatally flawed.

        The Court also notes that while it appears that an

individual may be disabled under the ADA even if she had a

preexisting condition or if exposure causing the illness was

outside of work, Plaintiff has provided no evidence supporting

---

[5] "These symptoms [dizziness, forgetfulness, poor vision,
difficulty concentrating, ringing in ears, loss of hearing,
confusion, scratchy throat, sneezing, heaviness in legs, racing
heart, very stiff and achy, brain felt swollen, deteriorating
immune system and strength] partially or totally inhibited me
from thinking (can't focus and fogging or swollen feeling
brain), focusing, eating (nausea), walking (weakness in legs),
working (can't focus and in aching pain all over my joints),
lifting (weakness), bending (aching and weakness), communicating
(lack of focus or ability to think clearly), talking (lack of
focus or ability to think clearly), caring for myself (weakness
and lack of energy), reading (lack of concentration and focus),
learning (lack of concentration and focus) and breathing  (hard
to breath [sic] feel like I can't inhale)" when the symptoms
were present, which Plaintiff claims were present on essentially
a daily basis during the years 2005 to the present day...."
Kuehu Decl. ¶ 19

those circumstances here.[6]  Indeed, in her HCRC Charge of

Discrimination, Plaintiff specifically asserted that "[i]n

January 2006, I developed a disability while working."  Zorc

Decl., Ex. J, ECF No. 45-15.  Further, Plaintiff's evidence

supporting the existence of her impairment and resulting

symptoms appears to be the same as before the LIRAB.  And

Plaintiff points out in her own Opposition that her doctors

determined the Reservations Center location "to be the cause of

her medical condition."  Opp. at 6.  These assertions belie

Plaintiff's implication that her conditions arose from something

other than her employment.  No reasonable jury looking at this

record could conclude otherwise, and thus the particular factual

issue is the same as the one the LIRAB addressed.

        Accordingly, the Court concludes that Plaintiff is

collaterally estopped from establishing under the ADA and Hawaii

law that she is disabled by virtue of her claimed impairments of

Multiple Chemical Sensitivity, Fibromyalgia, Migraine and

Chronic Fatigue Syndrome.

---

[6] Even if Plaintiff had evidence to support this claim, she would
be collaterally estopped from showing that her work environment
exacerbated her condition, as the ICA noted in its opinion that
she did not challenge the LIRAB's factual findings that she was
not exposed to a medically significant amount of gas or exposed
for a significant period of time.  ICA Mem. Op. at 6.

B. Whether Plaintiff Can Demonstrate that She Was
   Substantially Limited in A Major Life Activity

Defendant argues in the alternative, that even if

Plaintiff is not collaterally estopped from litigating the issue

of her impairment, she is unable to establish that she was

substantially limited in a major life activity, as required by

the first element of her *prima facie* case.  Motion at 20-22.

The Ninth Circuit has recognized that the term

"substantially limited" should be "'interpreted consistently

with the findings and purposes of the ADA Amendments Act of

2008'" and that "[d]etermining whether an impairment is

substantially limiting 'requires an individualized assessment.'"

Weaver v. City of Hillsboro, 763 F.3d 1106, 1111-12 (9th Cir.

2014) (quoting 42 U.S.C. § 12102(4)(A)-(B) and 29 C.F.R. §

1630.2(j)(1)(iv)).  "An impairment is a disability...if it

substantially limits the ability of an individual to perform a

major life activity as compared to most people in the general

population."  29 C.F.R. § 1630.2(j)(1)(ii); see also id. §

1630.2(j)(4) (relevant factors for comparison include

conditions, manner, and duration of time for performance of

activity).[7]  However, the mere existence of an impairment that

_____

[7] HAR § 12-46-182 similarly provides that a substantial
limitation "means limited in the ability to perform a major life
activity as compared to most people in the general population"
(Continued...)

causes difficulty performing a major life activity does not necessarily rise to the level of a substantial impairment.  <u>See</u> <u>Kim v. Potter</u>, 460 F. Supp. 2d 1194, 1200 (D. Haw. 2006) (knee impairment causing a limp was not a substantial impairment).

Plaintiff asserts that her symptoms have "partially or totally inhibited" her from engaging in numerous major life activities on a nearly daily basis over the last decade.  <u>See</u> <u>supra</u> at 12 n.4; Opp. at 26-27; Kuehu Decl. ¶ 19.  However, aside from her apparent total inability to be at the Reservations Center, Plaintiff has not established a genuine dispute as to whether her symptoms are substantially limiting. Although when Plaintiff's symptoms are at their worst, she asserts she is "essentially useless," Kuehu Decl. ¶ 19, she does not indicate how often her symptoms limit her to this extent. It is also not clear from Plaintiff's declaration which activities she was only partially inhibited from performing and which she was totally inhibited from performing, or how severe her partial limitations are.  Such a conclusory declaration is insufficient to create a genuine dispute of fact.  <u>See</u> <u>Rohr v. Salt River Project Agric. Improvement and Power Dist.</u>, 555 F.3d 850, 858 (9th Cir. 2009) (While "[a] plaintiff's testimony may suffice to establish a genuine issue of material fact," in order

---

and allows courts to consider the condition, manner, and duration of performance of the major life activity.

to survive summary judgment "an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment.") (internal quotation marks and citation omitted).

Moreover, the record renders certain assertions in Plaintiff's declaration implausible on their face. For example, Plaintiff's academic pursuits and generally successful academic record suggest that she is not substantially inhibited in her ability to communicate, read, or learn. See Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1065-66 (9th Cir. 2005) (granting summary judgment where record of academic success rendered claimed limited ability to learn implausible). Plaintiff also admits that she "wanted and was physically ready to return to work in October 2009" and was unable to do so as the conditions at the Reservations Center remained unchanged, Opp. at 27-28, which further calls into question that Plaintiff was substantially limited other than in her employment. Under such circumstances, the Ninth Circuit requires plaintiffs to "come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial," which Plaintiff has not done here. See Wong, 410 F.3d at 1066.

In addition, no reasonable jury could find on this record that Plaintiff was substantially limited in her ability to work, as compared to the general population. Plaintiff

claims to be able to work in any place with a "safe, non-toxic environment where there were not chemical exposures." Opp. at 27 (emphasis omitted). As the ALJ concluded that Plaintiff was exposed to hydrogen sulfide at the Reservations Center on January 25, 2006, LIRAB Decision at 25, Plaintiff's asserted limitation would preclude her from working there.[8] However, Plaintiff has offered no other evidence to support that her limitations would prevent her from working at any other job.

The interpretive guidance for the ADA states that "a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." See 29 C.F.R. § Pt. 1630, App. And in Nimi-Montalbo v. White, the court concluded that the plaintiff was not substantially limited from working where the medical evidence only limited her ability to perform jobs "within the workplace environment to which she is currently assigned and under the specific administration and supervision of this workplace setting." 243 F. Supp. 2d 1109, 1123 (D. Haw. 2003). In so holding, the court

---

[8] The Court recognizes that Plaintiff is collaterally estopped from challenging the LIRAB's finding that she was not exposed to medically significant amounts of hydrogen sulfide and was not exposed to such gas for an extended period of time on January 25, 2006. See ICA Mem. Op. at 6. However, taking Plaintiff's limitation that she is unable to work at a place with *any* chemical exposures as true, Plaintiff is unable to work at the Reservations Center location.

noted that the analysis should focus "on the nature and requirements of jobs at issue, not on the particular people with whom the claimant works or the 'environment' of the particular workplace." Id.

Based on Plaintiff's stated limitations and the record before the Court, no reasonable jury could find that Plaintiff has been substantially limited in working compared to "most people in the general population." See Weaving, 763 F.3d at 1112 (affirming summary judgment where record of job competence without accommodation showed that plaintiff's ADHD did not limit his ability to work compared to most people in the general population) (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

C. Whether Plaintiff Can Demonstrate that She Was a "Qualified" Individual

Defendant also argues in the alternative that Plaintiff cannot establish that she is a qualified individual. Motion at 22-31. Given its findings above, the Court does not need to reach this issue. Nevertheless, to establish that she is a qualified individual, Plaintiff must provide evidence showing that she "can perform the essential functions of the employment position" with or without reasonable accommodation. 42 U.S.C. § 12111(8); Nunes, 164 F.3d at 1247; see also HAR § 12-46-182 (to be qualified, an individual must satisfy the job's qualification standards and be able to perform the essential

functions of the position with or without reasonable accommodation).

### 1. Whether Physical Presence at the Reservations Center Is an Essential Function

The Ninth Circuit has recognized, along with a majority of circuits, that "where performance requires attendance at the job, irregular attendance compromises essential job functions." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012). Some jobs, for instance, "require the employee to work with items and equipment that are on site." Id. (noting Corder v. Lucent Techs., Inc., 162 F.3d 924 (7th Cir. 1998), which involved telephone customer support, as an example).

Plaintiff claims that her essential job functions were "to talk to customers regarding flight reservations and input the customer's flight reservations into the computer." Kuehu Decl. ¶ 3; Opp at 28. However, she has not specifically contested that "[United] did not have the capabilities or technology [in 2009] for employees to work remotely" as its "technology and systems did not provide for rerouting calls or accessing the reservations software remotely." Peterson Decl. ¶ 12. As such, there is no genuine dispute that the RSSR position required Plaintiff to be at the Reservations Center.

### 2. Whether Plaintiff Could Perform the Essential Functions of the RSSR Position With Or Without a Reasonable Accommodation

The Court next turns to whether Plaintiff can perform the essential functions of the job with or without a reasonable accommodation.  42 U.S.C. § 12111(8).  Neither party contends that Plaintiff was able to perform this job without a reasonable accommodation, so the Court will only address whether she could do so with a reasonable accommodation.  Plaintiff bears the burden of showing the existence of a reasonable accommodation.  Dark v. Curry Cty., 451 F.3d 1078, 1088 (9th Cir. 2006).  "To avoid summary judgment, [Plaintiff] 'need only show that an accommodation' *seems reasonable on its face*, i.e., ordinarily or in the run of cases.'"  Id. (quoting U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002)) (emphasis added in Dark).

Reasonable accommodations require "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  The ADA specifies that accommodations may include part-time or modified work schedules and reassignment to a vacant position, 42 U.S.C. § 12111(9)(B).

a. Whether Defendant Failed to Engage in the Interactive Process

In order to identify a reasonable accommodation, Defendant had "an affirmative obligation to engage in an interactive process in order to identify, if possible, a reasonable accommodation that would permit [Plaintiff] to retain [her] employment." Dark, 451 F.3d at 1088. "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." Humphrey v. Memorial Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001). The Ninth Circuit has indicated that such engagement must be undertaken in good faith. Morton v. United Parcel Serv., Inc., 272 F.3d 1249, 1256 (9th Cir. 2001) ("Barnett holds that 'employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible.") (overruled in part on other issues). "Good faith participation in the process is a continuing obligation that may not be exhausted by one effort." Schwartz v. City & Cty. of Honolulu, Civ. No. 14-00527 HG-KJM, 2017 WL 701357, at *12 (D. Haw. Feb. 22, 2017) (citing Humphrey, 239 F.3d at 1138).

Plaintiff argues that because Defendant failed to engage in the interactive process in good faith, summary

judgment is improper.  Opp. at 29-30.  While the Court finds

that Plaintiff has established a genuine dispute of fact as to

Defendant's good faith, it nevertheless concludes that summary

judgment may still be granted on this alternate ground, in

addition to the other grounds discussed in this Order.

The critical factual issue that Plaintiff has raised

is Defendant's failure to explain why it could not provide her

requested accommodation or to discuss alternate possibilities or

what Defendant's ability to accommodate Plaintiff was.  Id. at

31.  Plaintiff also points to the fact that the assessment of

functional limitations provided by Defendant's own doctor was

more limited than the accommodation it offered to Plaintiff, and

the record does not show that Defendant explained this

discrepancy.[9]  Opp. at 30; Kuehu Decl., Ex. MM, ECF No. 62-1.

Failure to provide a meaningful dialogue or explanation can

demonstrate lack of good faith in the interactive process.  See

Livingston v. Fred Meyer Stores, Inc., 388 F. App'x 738, 741

---

[9] Although Defendant explained at the hearing that its doctor did
not examine Plaintiff and thus had to evaluate Plaintiff's
limitations from the evidence her doctor provided, this does not
resolve Defendant's failure to explain why its accommodation was
not within those limits.  However, the fact that the
accommodation offered differed from doctors' recommendations is
not, by itself, evidence of bad faith because "[a]n employer is
not obligated to provide an employee the accommodation he
requests or prefers."  Zivkovic  v. S. Cal. Edison Co., 302 F.3d
1080, 1089 (9th Cir. 2002) (internal citation and quotation
omitted).

(9th Cir. 2010) (finding triable issue of fact where employer denied plaintiff's requested accommodation "without providing a meaningful dialogue or explanation of its decision").

Plaintiff has stated that she asked about an 18-hour work schedule, which she understood was available, or the option of working in another location or from home. Kuehu Decl. ¶ 74. Plaintiff claims that Ms. Peterson did not explain why those accommodations could not be implemented, and did not offer other alternatives or offer to assist Plaintiff in applying for the CSR position. Id. Although the evidence Plaintiff offers is thin, in an abundance of caution the Court will find a genuine dispute of fact as Plaintiff's version conflicts with the summary of the meeting Ms. Peterson provided by letter. In that letter, Ms. Peterson stated that they discussed that there were no other locations in Hawaii where the RSSR position was being performed, that Plaintiff could transfer outside of Hawaii if there were open RSSR positions, and that the RSSR position is only performed in 6-hour shifts. Zorc Decl., Ex. W, ECF No. 45-29. Under Plaintiff's view of the facts, a reasonable jury could find that Defendant failed to engage in the interactive process in good faith.

However, no reasonable jury could come to the same conclusion as to Plaintiff's other contentions based on the record. Although Plaintiff asserts in her Opposition that Ms.

Peterson "ignored" Plaintiff's requests for a reasonable accommodation meeting for six weeks, Opp. at 30, the undisputed facts show that Ms. Peterson spoke with or emailed Plaintiff on multiple occasions regarding the information Defendant needed in order to conduct the meeting and where and when the meeting would be held. Kuehu Decl., Ex. II, ECF No. 61-5 (email chain between Plaintiff and Ms. Peterson regarding reasonable accommodation process); see Rider v. Lincoln Cty. Sch. Dist., No. 6:13-CV-02299-AA, 2015 WL 853071, at *8 (D. Or. Feb. 24, 2015) (multiple requests for more detailed explanation of limitations constituted good faith effort to seek reasonable accommodation).

Plaintiff also asserts Ms. Peterson refused to call the meeting a reasonable accommodation meeting. However, Ms. Peterson stated in the summary letter that the purpose of the meeting was "to discuss a possible accommodation. Zorc Decl., Ex. W, ECF No. 45-29; Kuehu Decl. ¶ 75. The substance of the meeting also shows that the subject of the meeting was a reasonable accommodation. See Zorc Decl., Ex. V, ECF No. 45-28. Finally, Plaintiff contests that she was improperly placed on EIS leave; however, as this placement occurred in 2006 – three years before Plaintiff requested a reasonable accommodation – it does not evidence lack of good faith. In sum, apart from Defendant's disputed failure to discuss and explain its position

on potential accommodations, the record would not allow a
reasonable jury to find a lack of good faith based on
Plaintiff's other contentions.[10]

### b. Whether a Reasonable Accommodation Was Possible

The foregoing findings do not end the Court's
analysis.  Where the defendant does not properly engage in the
interactive process, summary judgment is still available "if a
reasonable finder of fact *must* conclude that there would in any
event have been no reasonable accommodation available."  Dark,
451 F.3d at 1088 (emphasis in original) (internal citation and
quotation omitted).

Plaintiff's apparent position is that she is unable to
spend any time at the Reservations Center.  See Opp. at 27-28
(although Plaintiff was ready to return to work in 2009,
conditions at the Reservations Center had not changed and she
could not work there, based on doctor's recommendation, see Ex.
JJ, ECF No. 61-6).  Plaintiff claims that her medical
restrictions do not allow her "to work or be at" that location.

---

[10] Plaintiff also asserts that the termination documents she was
provided in January 2010, which indicated she was not eligible
for rehire, shows discriminatory animus.  Opp. at 32; Kuehu
Decl., Ex. TT, ECF No. 63-3.  Defendant has submitted evidence
showing that this notation was made in error and was corrected
in April 2010.  Peterson Decl. ¶ 19; Ex. Z, ECF No. 45-32.
Regardless, because this notation was made months after the
reasonable accommodation process began, it is not relevant to
whether Defendant engaged in the interactive process in good
faith prior to her termination.

Kuehu Decl. ¶ 68; Zorc Decl., Ex. X at 3, ECF No. 45-30 ("A return to the [Reservations Center], is not an option based on my doctors restrictions."). As such, there does not appear to be any accommodation Plaintiff could have been provided that would have allowed her to fulfill her essential duties at the Reservations Center.[11] Cf. Sharp v. Am. Tel. & Tel. Co., No. C 99-1065 TEH, 2000 WL 970665, at *6 (N.D. Cal. July 10, 2000) (finding that defendant made a good faith effort where it explained that any potential job would require some repetitive handwork, which plaintiff was completely unable to perform).

Plaintiff also requested that she be allowed to work remotely. Opp. at 30. However, Plaintiff's unsupported speculation that a remote setup was possible, Opp. at 31, does not create a genuine dispute of fact with Defendant's evidence that a remote set up was not technologically possible.[12] Peterson Decl. ¶ 13 (describing how in 2009, Defendant's

---

[11] As such, the Court does not need to address Plaintiff's dispute as to whether Ms. Peterson only offered a paper mask or whether she more broadly offered any other appropriate personal protective device or mask. See Kuehu Decl. ¶ 77, Opp. at 17; Zorc Decl. Ex. W, ECF No. 45-29.

[12] Since this means that an accommodation was not possible in Hawaii, the Court need not address the dispute as to whether there were part-time work schedules of 20 hours or less available in Hawaii. See Kuehu Decl. ¶ 74 (18-hour shifts available); Peterson Decl. ¶ 13; Ex. W, ECF No. 45-29 (no 20-hour per week positions available).

technology and systems did not allow for rerouting calls or accessing reservation software remotely).

The Court next addresses whether a reassignment to another position was possible. It is undisputed that there were no other open RSSR positions. Def. CSF ¶ 20. However, Plaintiff applied to CSR positions, a position outside of her classification as an RSSR, in various locations. Id. ¶ 22. In order for reassignment to one of these positions to be a possible accommodation, Plaintiff must have been qualified. However, it is undisputed that Plaintiff's performance on her interview for the Kona CSR position did not result in a qualifying score. See id. ¶ 24.

Plaintiff seeks to undermine the interview report by arguing that Ms. Peterson "poison[ed] the well" and that her interviewer was distracted and inappropriately discussed her previous recruiting process for the Reservations Center. Opp. at 32; Kuehu Decl. ¶ 85. However, even if the report were wholly undermined, Plaintiff's conclusory assertion that she was "qualified" for the CSR position, Kuehu Decl. ¶¶ 78, 88, is insufficient. Plaintiff offers no evidence supporting how she met the standards set forth in the CSR interview report form for the position, Zorc Decl., Ex. F-1, ECF No. 45-7, and has not contested that Ms. Butler incorrectly recorded any of her narrative responses or that those narrative responses, if

evaluated objectively, should have led to a higher rating. As such, no reasonable jury could conclude that Plaintiff was in fact qualified and that transfer into the Kona CSR position was a reasonable accommodation.[13] See Sevcik v. Unlimited Constr. Servs., Inc., 462 F. Supp. 2d 1140, 1148 (D. Haw. 2006) (Kay, J.) (although reassignment may be a reasonable accommodation, the employer is not required to train an employee for a position he is not qualified to perform).

Finally, Plaintiff has faulted Defendant for not offering leave as an accommodation.[14] In considering whether a leave of absence is a reasonable accommodation, "the question is whether the leave of absence is likely to enable the employee, upon his return from leave, to resume performing the essential functions of the job." Shim v. United Air Lines, Inc., No. CIV.

---

[13] Plaintiff's argument that she should have been placed into a CSR position in another location, such as Maui, Kuehu Decl. ¶ 88, also fails because she has not demonstrated she is qualified for that position either. Nor has Plaintiff challenged Defendant's policy that unsuccessful applicants must wait six months before reapplying to the same position nor shown why she should be exempt from this policy.

[14] Plaintiff argues that the EIS leave does not qualify as a reasonable accommodation as it was mandated under the CBA, relying on EEOC v. ValleyLife, No. CV 15-00340-PHX-GMS, 2017 U.S. Dist. LEXIS 7558 (D. Ariz. Jan. 19, 2017). Opp. at 21. This case is not relevant, as it addresses whether the employer had a duty to engage in the interactive process and whether the employees were qualified. In any event, the issue before the Court is whether Defendant's exercise of its discretion to twice extend Plaintiff's EIS leave constitutes a reasonable accommodation.

11-00162 JMS, 2012 WL 6742529, at *8-9 (D. Haw. Dec. 13, 2012)
(internal citation and quotation omitted).  Defendant is not
required to extend an indefinite leave to Plaintiff.  See Larson
v. United Natural Foods W. Inc., 518 F. App'x 589, 591 (9th Cir.
2013) ("[A]n indefinite, but at least six-month long, leave of
absence...is not a reasonable accommodation.").

Here, Plaintiff has not provided any evidence to
suggest that a leave of any length would have allowed her to
return to work at the Reservations Center.  When Plaintiff was
assessed with "long-term limitations" of 90 days or more, she
had already been on EIS leave for almost three years; her EIS
leave was then further extended twice with no sign of
improvement.  Kuehu Decl. ¶ 66; Ex. MM, ECF No. 62-1 (Assessment
of Functional Capabilities); Ex. RR, ECF No. 63-1 ("[B]ecause we
needed to clarify some medical information and then you put in
for the KOACS position so soon after your RAP session, we have
extended [your EIS] pending the results of your interview.").
See Trujillo v. U.S. Postal Serv., 330 F. App'x 137, 139 (9th
Cir. 2009) (granting summary judgment where previously granted
leave had failed to improve underlying impairment).

For all the foregoing reasons, the Court concludes
that no reasonable jury could find that Plaintiff is able to
show that she is disabled or that a reasonable accommodation was

possible.  As such, the Court GRANTS Defendant's Motion as to Plaintiff's federal and state disability discrimination claims.

## II. Retaliation Claims

In order to establish a *prima facie* case of retaliation under the ADA, Plaintiff must show that (1) she has been engaged in protected activity; (2) that she suffered an adverse action; and (3) that there is a causal link between the two.  See T.B. v. San Diego Unified Sch. Dist., 806 F.3d 451, 473 (9th Cir. 2015) (noting that the Ninth Circuit uses the Title VII burden-shifting framework under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) in ADA retaliation claims). The standard for the causal link is but-for causation.[15]  Id.

---

[15] Hawaii has adopted the McDonnell-Douglas burden-shifting analysis for retaliation claims under HRS § 378-2.  See Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 426, 32 P.3d 52, 70 (2001), as amended (Oct. 11, 2001).  Plaintiff does not contest that federal law shifted to a but-for test for causation in the Supreme Court's opinion in Univ. of Texas S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013), but argues that Hawaii still employs a mixed motive test for causation under Schefke. Opp. at 32.  The Court has been unable to locate any Hawaii authority post-dating Nassar on this issue, but the Hawaii Supreme Court has indicated its intention to be consistent with federal law.  See Schefke, 96 Haw. at 426.  In addition, in post-Nassar decisions, district courts have used the but-for test for both federal and state retaliation claims.  See, e.g., Machorek v. Marriott Ownership Resorts, Inc., No. CV 15-00230 JMS-KSC, 2016 WL 6963029, at *4-6 & n.3 (D. Haw. Nov. 28, 2016); see also Hodges v. CGI Fed. Def. & Intelligence, No. CIV. 12-00420 LEK, 2014 WL 5528228, at *10-11 (D. Haw. Oct. 31, 2014); Freitas v. Kyo-Ya Hotels & Resorts, LP, No. CIV. 12-00358 SOM, (Continued...)

(applying in the ADA context the but-for standard from the Supreme Court's opinion in <u>Univ. of Texas S.W. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013) in the Title VII context). The but-for standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." <u>Nassar</u>, 133 S. Ct. at 2533.

Defendant argues that Plaintiff is collaterally estopped from establishing the causation element of her retaliation claims because of the ALJ's findings in Plaintiff's environmental whistleblower case that Plaintiff was terminated because of the expiration of her EIS. Motion at 33; ALJ Decision at 23. The Court has already set forth the principles of collateral estoppel <u>supra</u>. Here, there is no question that both proceedings involve the same parties. However, Plaintiff appears to challenge both whether the ALJ decision is a proper basis for collateral estoppel and whether the issues are identical. <u>See</u> Opp. at 33-34.

Plaintiff's implication that an administrative decision may not be entitled to preclusive effect is without merit. "When an administrative agency is acting in a judicial

---

2013 WL 6073455, at *7 (D. Haw. Nov. 18, 2013). This Court will also use the but-for test for claims here.

capacity and resolves disputed issues of fact properly before it
which the parties have had an adequate opportunity to litigate,
the courts have not hesitated to apply [preclusion] to enforce
repose." Astoria Fed. Sav. & Loan Ass'n v. Solimno, 501 U.S.
104, 107 (1991); see also State v. Higa, 79 Haw. 1, 8, 897 P.2d
928, 935 (1995) (noting the same for preclusive effect of agency
action under Hawaii collateral estoppel).  There is no
suggestion that the ALJ and ARB were not acting in a judicial
capacity or that the parties did not have an adequate
opportunity to litigate the issues before either decisionmaker.
Plaintiff did not appeal, despite the availability of judicial
review.  See Def. CSF ¶ 27.  As such, the ARB decision is a
final judgment which may form the basis of collateral estoppel.
See Wehrli v. Cty. of Orange, 175 F.3d 692, 694 (9th Cir. 1999)
(noting that "the availability of judicial review is a crucial
factor in determining preclusive effect" and noting that the
Ninth Circuit "accord[s] preclusive effect where judicial review
of the administrative adjudication was available but unused").

        The issue before the ALJ was whether Plaintiff's
November 3, 2010 letter to the EPA regarding alleged
environmental violations was a motivating factor in Defendant's
decision to terminate her.  ALJ Decision at 22.  The issue in
the instant case is whether Defendant terminated Plaintiff
because of her request for reasonable accommodation under the

ADA and opposition to disability discrimination.  See Opp. at
33; Compl. ¶¶ 111, 118.  On their faces, the two issues are not
identical.  Moreover, the ALJ's ultimate conclusion which was
affirmed by the ARB that the Plaintiff failed to establish a
causal connection between her protected activity in that case
and her termination, ALJ Decision at 23, does not resolve
whether there is a causal connection between her ADA activity in
the instant case and her termination.

Nevertheless, Plaintiff's attempt to create a dispute
of fact as to causation based on the timing of her request and
termination, Opp. at 33, is insufficient.  "[I]n some cases,
causation can be inferred from timing alone where an adverse
employment action follows on the heels of protected activity" if
it occurs "fairly soon after the employee's protected
expression."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d
1054, 1065 (9th Cir. 2000).  However, the Ninth Circuit has
recently recognized that three months is too remote to infer
causation.  See Serlin v. Alexander Dawson Sch. LLC, 656 F.
App'x 853, 855-56 (9th Cir. 2016) (affirming summary judgment on
causation where the plaintiff relied solely on a three month gap
and did not provide other evidence that protected activity was a
factor in adverse employment decision); see also Arakaki v.
Brennan, No. CV 15-00229 HG-RLP, 2017 WL 1240188, at *9-10 (D.
Haw. Mar. 31, 2017) (granting summary judgment on causation

where 30 days after his complaint, employee was assigned to work a holiday, despite objection, and the supervisor had previously worked holidays when employees were unavailable).

As in Serlin and Arakaki, there is no evidence beyond mere timing to support that Defendant terminated Plaintiff in retaliation for requesting reasonable accommodation. Plaintiff admits that Ms. Peterson notified her on September 21, 2009 that her EIS would expire on October 23, 2009 and that termination would be automatic. Kuehu Decl. ¶ 57. The Court finds that under these circumstances, the record does not contain a dispute of material fact, and no reasonable jury could find that Plaintiff established a *prima facie* case that she would not have been terminated but-for her protected activity. See also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Even if Plaintiff was able to set forth a *prima facie* case of but-for causation, she has not challenged that Defendant has met its burden to provide a legitimate non-discriminatory explanation, according to the next step of the McDonnell-Douglas burden-shifting framework. See McDonnell Douglas, 411 U.S. at

804.  As in her environmental whistleblower case, termination of

Plaintiff's EIS leave is a legitimate, non-discriminatory

explanation.  See ALJ Decision at 24-25.  It is undisputed that

Defendant twice informed Plaintiff that her EIS would expire on

October 23; that Defendant extended her EIS in order to obtain

further medical information regarding her ability to work; that

Defendant again extended her EIS pending the results of the Kona

CSR application; and that Defendant terminated Plaintiff after

she was not selected.  Def. CSF ¶¶ 16, 18, 20, 23-24.

        Under the burden-shifting framework, Plaintiff must

then provide evidence showing Defendant's stated reason is

pretextual.  See McDonnell Douglas, 411 U.S. at 804.  Although

Plaintiff does not appear to explicitly argue pretext, the Court

will construe Plaintiff's arguments about animus as such.  See

Opp. at 33.  "A plaintiff can show pretext directly, by showing

that discrimination more likely motivated the employer, or

indirectly, by showing that the employer's explanation is

unworthy of credence."  Vasquez v. Cty. of Los Angeles, 349 F.3d

634, 941 (9th Cir. 2003).  Direct evidence is usually composed

of "clearly...discriminatory statements or actions by the

employer."  Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094-95

(9th Cir. 2005).  Circumstantial evidence constitutes "evidence

that requires an additional inferential step to demonstrate

discrimination."  Id. at 1095.  A plaintiff's circumstantial

evidence must be both specific and substantial in order to survive summary judgment.  Becerril v. Pima Cty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009).

The Court has already addressed supra Plaintiff's assertion that she was improperly placed on EIS in 2006.  See also ALJ Decision at 27 (reasoning that Plaintiff's extensive arguments about improper placement on EIS did not show retaliation).

The Court also finds that no reasonable jury could agree with Plaintiff that Ms. Peterson "poison[ed] the well" by volunteering to May Pereles at Sourceright that Plaintiff had been on EIS for three years.  Kuehu Decl., Ex. SS, ECF No. 63-2. This is because there is no evidence that this statement was ever communicated to Plaintiff's interviewer, Ms. Butler.  Ms. Butler has also affirmatively stated that she was not made aware of Plaintiff's complaints either before or during the interview. Zorc Decl., Ex. F, Butler Decl. ¶ 13, ECF No. 45-7.  Plaintiff has attempted to infer that Ms. Butler must have known about Plaintiff's complaints, because she "was inappropriate in discussing her previous recruiting process" for the Reservations Center and "inappropriately wanted [Plaintiff] to add to her discussion of the HNLRR building conditions."  Kuehu Decl. ¶ 85. However, Plaintiff's vague conclusion that Ms. Butler acted inappropriately is not sufficient to create a genuine dispute of

fact.  As might be expected in a job interview, Ms. Butler explored Plaintiff's prior work experiences.  See Zorc Decl., Ex. F, ECF No. 45-7 (CSR Interview Guide).  Without more specific evidence of what Ms. Butler said, a reasonable jury would not have a sufficient basis to conclude that the well was poisoned and Ms. Butler knew about Plaintiff's complaints.

Finally, Plaintiff argues that designating her as not eligible for rehire in the January 2010 termination documents is evidence of pretext.  See Opp. at 33.  However, the only evidence Plaintiff relies on is the face of the document.  See Opp. at 32; Kuehu Decl. ¶ 96; Ex. TT (termination documents).  Defendant does not dispute this document, but has offered additional evidence showing that the designation was a mistake that was later corrected.  Peterson Decl. ¶ 19; Ex. Z, ECF No. 45-32.  Plaintiff has offered no evidence contesting that Defendant did not "honestly believe[]" this was a mistake.  Funai v. Brownlee, 369 F. Supp. 2d 1222, 1231 (D. Haw. 2004) (Kay, J.); see also Hudson v. Shinseki, No. C11-00939 HRL, 2011 WL 3861689, at *7 (N.D. Cal. Aug. 31, 2011) ("Pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.") (internal quotation and citation omitted).  A reasonable jury would thus have no basis to find that the initial designation of ineligibility for rehire shows pretext.  See Sanford v. Landmark

Prot., Inc., No. C 10-0447 RS, 2011 WL 1877904, at *8 (N.D. Cal. May 17, 2011), aff'd, 495 F. App'x 783 (9th Cir. 2012) (granting summary judgment where defendant asserted that the adverse employment action resulted from an administrative mistake and plaintiff made no showing of pretext).

As such, no reasonable jury could find that Plaintiff's protected ADA activity was the but-for cause of her termination or that Defendant's stated reasons for terminating her were pretextual. See Lombardi v. Castro, No. 15-55276, 2017 WL 104836, at *2 (9th Cir. Jan. 11, 2017) (granting summary judgment where plaintiff had not shown but-for causation or that stated reasons were pretextual, as evidenced by interview notes demonstrating plaintiff interviewed poorly and lacked relevant experience). Accordingly, the Court GRANTS Defendant's Motion as to the retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court declines to address Defendant's evidentiary objections, ECF No. 78, GRANTS Defendant's Motion for Summary Judgment, ECF No. 44, and DISMISSES Plaintiff's remaining claims. The Court DIRECTS the Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 26, 2017.



_____
Alan C. Kay
Sr. United States District Judge

<u>Kuehu v. United Airlines, Inc., et al.</u>, Civ. No. 16-00216 ACK-KJM, Order
Granting Defendant's Motion for Summary Judgment.